UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
SAI KWAN WONG by his Guardian KEVIN
WONG, individually and on behalf of
a class of all others similarly
situated,

                    Plaintiffs,              OPINION


        -against-                            07 Civ. 879 (MGC)


RICHARD F. DAINES, M.D., in his
official capacity as Commissioner,
New York State Department of
Health, ROBERT DOAR, in his
official capacity as Commissioner,
New York City Human Resources
Administration, and MICHAEL O.
LEAVITT, in his official capacity
as Secretary, United States
Department of Health and Human
Services,

                    Defendants.

----------------------------------X

APPEARANCES:

            WOODS OVIATT GILMAN LLP
            Attorneys for Plaintiffs
            700 Crossroads Building
            2 State Street
            Rochester, New York  14614

            By:  René H. Reixach, Jr., Esq.


            PETROFF & BELLIN, LLP
            Attorneys for Plaintiffs
            60 East 42nd Street, Suite 1026
            New York, New York  10165

            By:  Aytan Y. Bellin, Esq.

ANDREW M. CUOMO
Attorney General of the State of New York
Attorneys for Defendant Commissioner Daines
120 Broadway
New York, New York  10271

By:  Ivan B. Rubin, Esq.


MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorneys for Defendant Commissioner Doar
100 Church Street
New York, New York  10007

By:  Marilyn Richter, Esq.


MICHAEL J. GARCIA
United States Attorney for the
  Southern District of New York
Attorneys for Defendant Secretary Leavitt
86 Chambers Street
New York, New York 10007

By:  Carolina A. Fornos, Esq.


**Cedarbaum, J.**

Sai Kwan Wong ("Wong"), through his guardian Kevin Wong,

sues Richard Daines, Commissioner of the New York State

Department of Health ("DOH"); Robert Doar, Commissioner of the

New York City Human Resources Administration ("HRA"); and Michael

Leavitt, Secretary of the United States Department of Health and

Human Services ("HHS").  Wong sues these officers in their

official capacity and principally seeks injunctive and

declaratory relief.  He sues the state and city officers pursuant

to 42 U.S.C. § 1983 and the federal officer pursuant to 5 U.S.C.

§ 702.[1]  Commissioner Daines moves for summary judgment.

Commissioner Doar moves to dismiss for failure to state a claim,

or, in the alternative, for summary judgment.  Secretary Leavitt

moves to dismiss for lack of subject matter jurisdiction, or, in

the alternative, for summary judgment.  Wong moves for summary

judgment and for class certification on behalf of all disabled,

institutionalized individuals in New York who receive Medicaid

benefits and place income into a supplemental needs trust under

42 U.S.C. § 1396p(d)(4).

     For the reasons that follow, the defendants' summary

judgment motions are granted.


## BACKGROUND

     The parties have stipulated to all of the material facts.

Sai Kwan Wong, a fifty-four-year-old man, has resided in a

nursing home in Queens since October of 2005.  Wong was

institutionalized after suffering severe brain trauma in an

automobile accident.

---

[1]
     Although Wong does not cite the Administrative Procedure Act
     in his complaint, it is not necessary to do so in order to
     bring suit against Secretary Leavitt.  Wong has alleged
     sufficient facts to make clear that 5 U.S.C. § 702 gives him
     a right of review.  He is not required to state the proper
     grounds for the court's jurisdiction when "the court already
     has jurisdiction and the claim needs no new jurisdictional
     support."  Fed. R. Civ. P. 8(a)(1).

In November of 2005, Wong applied for Medicaid coverage.
Medicaid, in the words of Judge Friendly, is "a statute of
unparalleled complexity."  DeJesus v. Perales, 770 F.2d 316, 321
(2d Cir. 1985).  Medicaid is a joint federal-state program in
which federal and state governments pay for the cost of medical
care for certain categories of people.  States that choose to
participate in Medicaid must operate their Medicaid programs in
accordance with federal law.  42 U.S.C. § 1396a; Schweiker v.
Gray Panthers, 453 U.S. 34, 37 (1981).  In the state of New York,
Medicaid is administered by the Department of Health.  DOH has
divided the state into fifty-eight social services districts, and
in New York City the Human Resources Administration is the local
agency responsible for administering the Medicaid program.

Broadly speaking, Medicaid is available to low-income people
who are blind, disabled, aged 65 and older, members of families
with dependent children, or qualified pregnant women or children.
42 U.S.C. § 1396a(a)(10); 42 C.F.R. §§ 430.0; 435.4.

In December of 2005, HRA determined that Wong was eligible
for Medicaid.  Wong does not challenge his eligibility
determination; he challenges HRA's determination of his Medicaid
benefits, or more precisely, HRA's determination of the amount of
money Wong must contribute to his medical care.

In the case of institutionalized individuals, eligible
Medicaid recipients are required to contribute to the cost of

their care if possible.  42 C.F.R. § 435.832(a)(1).  In New York,

an individual's contribution is called a NAMI, an acronym for Net

Available Monthly Income.  Wong's sole source of income is a

monthly Social Security Disability Insurance payment of $1,401.

To determine his NAMI, HRA begins with Wong's total monthly

income of $1,401 and makes certain deductions, such as a personal

needs allowance of $50 a month and a health insurance premium.

18 N.Y.C.R.R. 360-4.9.  Wong's income less the deductions, <u>i.e.</u>

his NAMI, is $1024.81 per month.  Each month, therefore, Wong

must contribute $1024.81 toward the cost of his nursing home

care.  Medicare pays the rest, approximately $8000 a month.

In November of 2006, Wong began depositing his monthly

Social Security Disability Insurance payment into a supplemental

needs trust ("SNT") established under 42 U.S.C. § 1396p(d)(4)(A).

In general, supplemental needs trusts are established for

the benefit of people with severe and chronic disabilities.

Supplemental needs trusts are meant to provide for expenses that

government assistance programs such as Medicaid do not cover.

<u>Sullivan v. County of Suffolk</u>, 174 F.3d 282, 284 (2d Cir. 1999).

"For example, a disabled person can use an SNT to provide

additional health care services and equipment, specialized or

unique therapy, private health insurance, educational and

vocational training, computers and software, case management

services, and recreational activities."  Joseph A. Rosenberg,

Supplemental Needs Trusts for People with Disabilities:  The Development of a Private Trust in the Public Interest ("Rosenberg"), 10 B.U. Pub. Int. L.J. 91, 95-96 (2000).  Wong's supplemental needs trust was created to pay for a Cantonese-speaking aide.  (Transcript of November 29, 2007 Hearing, at 16.)

In November of 2006, HRA reviewed Wong's supplemental needs trust and determined that Wong was still eligible for Medicaid benefits.  However, HRA determined that Wong's monthly income was not sheltered by its placement in the trust.  HRA continued to calculate his NAMI as $1024.81, and Wong continues to make monthly payments toward his nursing home care in that amount.

According to Wong's interpretation of the applicable Medicaid statute, 42 U.S.C. § 1396p(d), the monthly income placed in his supplemental needs trust should be sheltered from the benefits determination.  Under this interpretation, his total income is zero, his NAMI must also be zero, and Medicaid should therefore pay the entire $9000-a-month bill for his nursing home.

**DISCUSSION**

**I.  The motions to dismiss**

Before moving to the merits of the statutory arguments, it is necessary to address Commissioner Doar's motion to dismiss for failure to state a claim and Secretary Leavitt's motion to dismiss for lack of subject matter jurisdiction.  Commissioner

Doar argues that he is not a necessary party because, first, HRA simply implements the regulations and policies of the state and federal governments, and, second, he has no ability to provide the relief sought by Wong.  Secretary Leavitt argues that Wong cannot sue under 5 U.S.C. § 702 because there has not been final agency action, see Darby v. Cisneros, 509 U.S. 137, 153-54 (1993), because Wong has failed to exhaust his administrative remedies in compliance with 5 U.S.C. § 704, and because Wong has not shown injury-in-fact as required by Article III of the Constitution, see Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

Unlike Secretary Leavitt and Commissioner Doar, Commissioner Daines presents no alternative to his motion for summary judgment.  Therefore the merits of the case must be decided in any event.  Because all defendants succeed on the merits, it is not necessary to decide Commissioner Doar's motion to dismiss for failure to state a claim or Secretary Leavitt's motion to dismiss for lack of subject matter jurisdiction, with the exception of the latter's injury-in-fact argument.

In Steel Co. v. Citizens for a Better Environment, the Supreme Court invalidated the doctrine of "hypothetical jurisdiction" as it applied to Article III standing.  523 U.S. 83, 101-02 (1998).  Some courts had engaged in the practice of assuming there was standing under Article III and moving directly

to the merits of the case, where the merits were clear, the standing question was unclear, and the same party would win in either case. Id. The Court held that Article III standing must be decided first. Id. at 101-02. The Court stated, however, that jurisdiction in other situations could be assumed when the party seeking dismissal for lack of jurisdiction would win on the merits. Id. at 97 n.2, 99-100 (citing, inter alia, Philbrook v. Glodgett, 421 U.S. 707, 721 (1975), in which jurisdiction over the Secretary of Health, Education, and Welfare was assumed, because "[t]he merits issue of statutory construction involved in the claim against the Secretary was precisely the same as that involved in the claim against the Commissioner [of the Vermont Department of Social Welfare]"); Guaylupo-Moya v. Gonzales, 423 F.3d 121, 132 n.10 (2d Cir. 2005) (because "exhaustion requirement raises a question of statutory, rather than constitutional, jurisdiction, we need not resolve the exhaustion issue in this case and can dispose of [the] argument on its merits").[2]

---
[2]

    Commissioners Daines and Doar do not challenge whether Wong has a private right of action under 42 U.S.C. § 1983 to enforce 42 U.S.C. § 1396p(d)(4)(A). A plaintiff alleging a violation of a federal statute will be permitted to sue under § 1983 if (1) Congress intended the provision in question to benefit plaintiff, (2) the right is not too vague and amorphous to be enforced by a judge, and (3) the statute imposes a binding obligation on the states. Blessing v. Freestone, 520 U.S. 329, 340-41. All three factors exist here: (1) Wong is a disabled person under age 65, the intended beneficiary of the § 1396p(d)(4)(A)

Secretary Leavitt argues that Wong's injury is not an injury-in-fact under Article III because he failed to avail himself of existing administrative remedies.  This argument is without merit.  To satisfy the requirement of injury-in-fact, Wong must show invasion of an interest, resulting in harm that is concrete, that affects the plaintiff personally and individually, and that is actual and imminent as opposed to hypothetical.  Lujan, 504 U.S. at 560.  Wong has established all of these elements.  HHS issued statements of federal policy requiring income placed in supplemental trusts to be counted in a Medicaid recipient's NAMI.  That policy is the direct cause of Wong's injury:  the NAMI calculation requires him to make payments of $1024.81 a month, whereas his own interpretation would require him to pay nothing.  Wong has therefore been personally and actually injured by an HHS regulation, which, according to Wong, violates his rights under § 1396p(d).  Secretary Leavitt attempts to turn exhaustion, a matter of statutory standing, into injury-in-fact, a matter of Article III standing.  Secretary Leavitt cites no case for the proposition that someone injured by an

---

exception; (2) Wong alleges a right that is clear and can easily be enforced, i.e., to have his NAMI calculated correctly under the statute; and (3) the statute is mandatory for those states which choose to provide Medicaid benefits.  See Lewis v. Rendell, 501 F. Supp. 2d 671, 687 (E.D. Pa. 2007) ("This Court ... concludes that 1396p(d)(4)(A) creates a federal right enforceable under § 1983.").

agency should be deemed to have injured himself under Article III
if he fails to seek an administrative remedy.


**II.   The motions for summary judgment**

All parties move for summary judgment on the interpretation
of 42 U.S.C. § 1396p(d).  There are no relevant factual disputes.
This case presents only a question of statutory interpretation:
whether income placed in a supplemental needs trust under §
1396p(d)(4)(A) should be included when calculating a Medicaid
recipient's benefits.


**A.   Overview of supplemental needs trusts and OBRA '93**

Before examining the statute, it is useful to review the
background against which the statute was enacted.

Supplemental needs trusts are governed by state law.  They
arose in order to provide support for permanently and severely
disabled persons.  A beneficiary is not given any control over
trust distributions, because if the beneficiary had control, the
trust assets would be considered resources of the beneficiary and
could disqualify him from eligibility for government benefits.
During the course of the evolution of supplemental needs trusts,
many state courts ruled that trust assets would not count as
resources of the beneficiary in determining eligibility for
government benefits, as long as (1) the trust was discretionary,

meaning that the trustee and not the beneficiary had control over distributions from the trust, and (2) the trust was intended only to supplement government benefits and not to provide general support.  (If a trust were intended to provide general support, then the government would count the trust assets as available resources of the beneficiary and demand reimbursement for government benefits.)  See generally Rosenberg at 109-17; see also, e.g., In re Escher, 407 N.Y.S.2d 106, 111-12 (N.Y. Sur. 1978) (the seminal case in New York), aff'd, 75 A.D.2d 531 (1980), aff'd, 52 N.Y.2d 1006 (1981); Zeoli v. Comm'r of Soc. Servs., 179 Conn. 83, 97 (1979); In re Carlisle Trust, 498 N.W.2d 260, 266 (Minn. Ct. App. 1993).

In New York, supplemental needs trusts have been authorized by statute.  An SNT must, among other things, be discretionary, be established for the benefit of a person with a severe and chronic disability, and have a trust document that prohibits the trustee "from expending or distributing trust assets in any way which may supplant, impair or diminish government benefits or assistance for which the beneficiary may otherwise be eligible." N.Y. Estates, Powers and Trusts Law § 7-1.12.  In other words, the trustee may only make distributions that supplement government assistance.

Over the past thirty years, Congress has passed several pieces of legislation restricting the ability of individuals to

shelter their assets in attempts to become eligible for Medicaid.
See Ramey v. Reinertson, 268 F.3d 955, 958-59 (10th Cir. 2001);
Ira Stewart Wiesner, OBRA '93 and Medicaid:  Asset Transfers,
Trust Availability, and Estate Recovery Statutory Analysis in
Context ("Wiesner"), 19 Nova L. Rev. 679, 682-83 nn.10 & 11
(1995), also published at 47 Soc. Sec. Rep. Serv. 757.  The act
at issue is the Omnibus Budget Reconciliation Act ("OBRA '93").
Pub. L. No. 103-66, 107 Stat. 312 (1993); see S. Rep. No. 103-
403(I) at *186-88 (detailing asset-sheltering strategies that
OBRA '93 sought to end).

    OBRA '93, among other things, "identified 'trusts' as the
single most offensive Medicaid estate planning vehicle and tried,
in almost every manner short of criminalization, to inhibit their
use."  Wiesner at 703.  OBRA '93 expanded the definition of
income attributable to the trust beneficiary, so that almost all
payments, from the corpus of the trust or from the income
generated by the trust, are counted as assets of the individual
seeking eligibility.  42 U.S.C. § 1396p(d)(3).  Any payments from
the trust that are not specifically covered by the statute are
considered to be assets transferred by the individual, which
triggers a penalty period of benefits ineligibility based on the
amount transferred.  42 U.S.C. § 1396p(c)(1)(E)(i),
(d)(3)(A)(iii), (d)(3)(B)(i)(II) & (d)(3)(B)(ii).

During the OBRA '93 legislative process, advocates for the disabled became concerned that the act as passed would limit the use of supplemental needs trusts.  They were successful in obtaining exceptions from the new trust rules of OBRA '93, to protect three kinds of trusts for the disabled:  payback trusts, Miller trusts, and pooled trusts.[3]  Rosenberg at 127-36; Wiesner at 712-14.  The first of these exception trusts is codified at 42 U.S.C. § 1396p(d)(4)(A), and is the subject of this action.


## B.  The statutory scheme

Supplemental needs trusts under § 1396p(d)(4)(A) are required (1) to benefit a disabled individual who is under 65 years of age, (2) to contain this beneficiary's assets, (3) to have been established for the beneficiary by a parent, grandparent, guardian, or court, and (4) to give the state the amount left in the trust when the beneficiary dies, up to the amount of total medical assistance paid by the state.  These

---

[3]

There is no significant legislative history regarding § 1396p(d)(4).  See H.R. Rep. 103-111, at *208 (May 25, 1993) (noting that the new asset-inclusion rules do not apply to the exception trusts); S. Rep. 103-403(I), at *188-89 (Oct. 7, 1994) ("Penalties are not applied to ... transfers to trusts solely for the benefit of disabled persons under 65."); Hobbs v. Zenderman, 542 F. Supp. 2d 1220, 1228 (D.N.M. 2008) (noting paucity of legislative history); In re Kennedy, 779 N.Y.S.2d 346, 348 (N.Y. Sur. 2004) (same).

trusts are commonly referred to as payback trusts.  In re

Kennedy, 779 N.Y.S.2d 346, 347 (N.Y. Sur. 2004).  They are also

referred to as Special Needs Trusts.  (Centers for Medicare and

Medicaid Services, State Medicaid Manual, § 3259.7(A).)

    The parties agree that Wong's supplemental needs trust is

covered by the payback trust exception created at 42 U.S.C. §

1396p(d)(4)(A).[4]  The parties disagree as to how far the

exception extends.

    Subsection (d) of § 1396p governs the treatment of trust

amounts for purposes of determining an individual's eligibility

for benefits and the amount of benefits an eligible individual

receives.  42 U.S.C. § 1396p(d)(1).

    Subsection (d) reads in relevant part:

    (d) Treatment of trust amounts

---

[4]

    New York's Surrogate's Court has held that payback trusts
    may be funded solely with Social Security Disability
    payments.  In re Kennedy, 779 N.Y.S.2d at 349-50.
    Commissioner Doar draws attention to the fact that a payback
    trust funded by a small monthly social security check and
    relied upon to pay for a nursing home aide will not, at the
    time of the beneficiary's death, have a corpus to pay back
    to the state.  However, as other courts have observed,
    "Nothing in the statute requires the trustee to preserve the
    State's interest in the trust corpus."  Norwest Bank of
    North Dakota, N.A. v. Doth, 159 F.3d 328, 332 (8th Cir.
    1998).  See also State v. Hammans, 870 N.E.2d 1071, 1078-83
    (Ind. App. 2007) (bulk of trust corpus paid to trustee fees,
    not to state); but see Hobbs v. Zenderman, 542 F. Supp. 2d
    1220, 1233 (D.N.M. 2008) (holding that "Congress intended to
    allow states to monitor special-needs trusts" to make sure
    they are administered properly).

(1) For purposes of determining an individual's eligibility for, or amount of, benefits under a State plan under this subchapter, subject to paragraph (4), the rules specified in paragraph (3) shall apply to a trust established by such individual.

(2)(A) For purposes of this subsection, an individual shall be considered to have established a trust if assets of the individual were used to form all or part of the corpus of the trust....

(3)(A) In the case of a revocable trust--

(i) the corpus of the trust shall be considered resources available to the individual,

(ii) payments from the trust to or for the benefit of the individual shall be considered income of the individual, and

(iii) any other payments from the trust shall be considered assets disposed of by the individual for purposes of subsection (c)[5] of this section.

(B) In the case of an irrevocable trust--

(i) if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual, the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual, and payments from that portion of the corpus or income--

(I) to or for the benefit of the individual, shall be considered income of the individual, and

(II) for any other purpose, shall be considered a transfer of assets by the individual subject to subsection (c) of this section;  and

(ii) any portion of the trust from which, or any income on the corpus from which, no payment could under any circumstances be made to the individual shall be

---

[5]   § 1396p(c) imposes a penalty period of benefits ineligibility on individuals who transfer assets.

considered, as of the date of establishment of the trust (or, if later, the date on which payment to the individual was foreclosed) to be assets disposed by the individual for purposes of subsection (c) of this section....

(4) This subsection shall not apply to any of the following trusts:

(A) A trust containing the assets[6] of an individual under age 65 who is disabled (as defined in section 1382c(a)(3) of this title) and which is established for the benefit of such individual by a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter.

To summarize:  Paragraph (d)(1) makes subsection (d) applicable to states' Medicaid eligibility and benefits determinations.  Paragraph (d)(2) makes subsection (d) applicable to any trust in which any part of an individual's assets have been placed.  Paragraph (d)(3) prevents asset sheltering, since almost everything in the trust is treated as resources or income when calculating Medicaid eligibility and benefits, or, failing that, is treated as an asset transfer, which results in a penalty period of benefits ineligibility.[7]  Finally, paragraph (d)(4)(A) makes the entirety of subsection (d) inapplicable to payback trusts.

---

[6]    Assets are defined in 42 U.S.C. § 1396p(e)(1) as "all income and resources of the individual."

[7]

   Asset transfers to a (d)(4) exception trust do not create ineligibility periods.  42 U.S.C. § 1396p(c)(2)(B)(iv).

**C.  HRA's income calculations for eligibility and benefits determinations**

When making Medicaid eligibility and benefits calculations, the HRA and DOH must apply the guidelines established by HHS. Schweiker v. Gray Panthers, 453 U.S. 34, 37 (1981).  The arm of HHS that interprets the Medicaid statute is the Centers for Medicare and Medicaid Services.  The agency publishes the State Medicaid Manual, which is, for DOH and HRA, the definitive statement of federal policy.[8]

The State Medicaid Manual sets out the rules for Medicaid eligibility and benefits determinations, and explains how those determinations should account for supplemental needs trusts. According to the manual, income placed in a payback trust is not counted for purposes of Medicaid eligibility, but is counted for purposes of Medicaid benefits.  However, the manual does not

---

[8] The parties have also provided copies of guidance letters from HHS and DOH issued in response to attorneys' queries. These letters do not contain useful explications of the agencies' positions, and therefore have been given no deference.  Hobbs, 542 F. Supp. 2d at 1230.  For instance, the August 4, 1995 letter of Roy Trudel, Senior Analyst for HHS, states that "the statutory language regarding these except[ed trusts] was drafted in such a way that, if other provisions affecting treatment of income and resources were applied to these trusts in a normal manner, the exception would have no effect.  In other words, other applicable portions of the statute would essentially negate the exceptions."  The letter does not indicate which portions of the statute would negate the exceptions, and the parties do not elucidate the matter.  The other guidance letters are similarly opaque and unhelpful, and are merely derivative of the Trudel letter, the State Medicaid Manual, or both.

provide any rationale for its interpretation of 42 U.S.C. §
1396p(d)(4). It simply issues the following edicts:

"While trusts for the disabled[9] ... are exempt from
treatment under the trust rules [of 42 U.S.C. § 1396p(d)(3)],
funds entering and leaving them are not necessarily exempt from
treatment under the rules of the appropriate cash assistance
program." (State Medicaid Manual § 3259.7(B).)

For trusts established with an individual's income,[10]
including income "received by the individual under the rules of
the SSI program," the State Medicaid Manual provides that "the
policies set forth in subsection C for treatment of income used
to create Miller trusts[11] apply [to payback trusts and pooled
trusts]." (Id. § 3259.7(B)(1).)

Subsection C, in turn, states that income placed in a
supplemental needs trust "is not counted in determining the
individual's eligibility for Medicaid. Thus, any income,
including Social Security benefits ... can be placed directly
into a [supplemental needs] trust by the recipient of those
funds, without those funds adversely affecting the individual's
eligibility for Medicaid. Also, income generated by the trust

---

[9]     "Trusts for the disabled" refers to both pooled trusts
        under paragraph (d)(4)(C) and payback trusts under
paragraph (d)(4)(A).
[10]    As opposed to an individual's resources, such as a lump sum
        settlement from a tort suit.
[11]    Miller trusts are the trusts excepted by paragraph
(d)(4)(B), the details of which are not relevant to this    case.

which remains in the trust is not income to the individual."
(Id. § 3259.7(C)(2).)

However, in calculating the Medicaid benefits to which the individual is entitled, income placed in a supplemental needs trust is counted.  The State Medicaid Manual provides that "[i]ncome placed in a [supplemental needs] trust is ... subject to the post-eligibility rules" laid out in the C.F.R. for determination of benefits.  (Id. § 3259.7(C)(5)(b).)  The relevant post-eligibility regulation is 42 C.F.R. § 435.832. Under this regulation, the benefits calculation begins with Wong's total income, 42 C.F.R. § 435.832(a)(1), which, according to § 3259.7(C)(5)(b) of the State Medicaid Manual, includes any income placed in a supplemental needs trust.  Certain deductions are then made, such as a personal needs allowance.  42 C.F.R. § 435.832(c).  After the deductions have been made from the total income, the agency must take the net amount of income and reduce its Medicaid benefits payment by that amount.  42 C.F.R. § 435.832(a)(1).  The individual must then pay the difference.  In New York, the amount to be contributed by the individual is called the NAMI, as discussed in the background section above.

## D.  § 1396p(d) is not ambiguous

Both Wong and the defendants agree that HHS has decided not to include assets placed in a payback trust when determining the

beneficiary's Medicaid eligibility.  Wong goes further, arguing
that subsection (d) requires similar treatment when Medicaid
benefits are calculated.  The defendants argue that subsection
(d) does not prohibit the state from treating such assets as part
of Wong's total income when determining his NAMI.

Wong's argument is as follows:  Paragraph (d)(3) provides
that a trust's corpus shall be considered resources of the
individual, that trust-generated income shall be considered
income of the individual, and that any other amounts in the trust
shall trigger a penalty period of ineligibility.  Paragraph
(d)(1) applies the (d)(3) asset-inclusion rules to both Medicaid
eligibility and Medicaid benefits determinations.  Paragraph
(d)(4)(A) insulates payback trusts from all of subsection (d),
which must mean that payback trusts are not affected by the
asset-inclusion rules as applied to both eligibility and benefits
calculations.  DOH and HRA therefore have no right under the
statute to include assets placed in a payback trust in Medicaid
benefits calculations.

Secretary Leavitt critiques Wong's position as follows.
Paragraph (d)(4) states a negative:  although it indicates that
nothing in subsection (d) applies to payback trusts, it fails to
indicate what rules, if any, do apply to payback trusts.
Congress did not expressly provide that payback trusts must be
disregarded when determining a beneficiary's Medicaid benefits.

Elsewhere in the Medicaid statute, Congress has expressly barred some forms of income from being considered in Medicaid benefits calculations. See, e.g., 42 U.S.C. § 1396a(o) (certain supplemental security income payments "will be disregarded for purposes of determining the amount of any post-eligibility contribution by the individual to the cost of the care and services provided by the hospital, skilled nursing facility, or intermediate care facility").

The fact that Congress did not use express language in paragraph (d)(4)(A) means, to Secretary Leavitt, that the paragraph is ambiguous; this supposed ambiguity has been appropriately and reasonably interpreted in the State Medicaid Manual, and therefore must be given "considerable deference." Cmty. Health Ctr. v. Wilson-Coker, 311 F.3d 132, 137-38 (2d Cir. 2002). Commissioners Daines and Doar make arguments substantially similar to Secretary Leavitt's. All defendants argue that, because of the statute's ambiguity, courts must defer to the interpretation offered by HHS.

Defendants' argument, however, is circular: Congress created an asset-inclusion rule. Congress then created an exception to the rule. The exception did not identify any rules applicable to the trusts being excepted. Therefore, HHS may fill this gap in the rules. Defendants' argument ignores the simplest

and clearest explanation:  that Congress excepted payback trusts from all eligibility and benefits calculations.  No gap exists.

By stating, in paragraph (d)(4)(A), that the entirety of subsection (d) "shall not apply" to payback trusts, Congress could only have meant one thing:  that the broad asset-inclusion rules of paragraph (d)(3) do not apply to payback trusts, in either the eligibility determinations or the benefits determinations articulated in paragraph (d)(1).  Subsection (d) is therefore not ambiguous.

However, paragraph (d)(4)(A) says nothing about the assets in an individual's possession which are about to be placed in a payback trust.  Paragraph (d)(4)(A) states that subsection (d) "shall not apply to ... A trust <u>containing</u> the assets of an individual...."  In other words, after the assets have been added to the trust corpus and are contained in the trust, the asset-inclusion rules of paragraph (d)(3) cannot reach them.

The only assets that may be placed in a payback trust are assets that originally belonged to the beneficiary.  42 U.S.C. § 1396p(d)(4)(A).  At the time those assets are owned by the disabled individual, prior to being placed in the trust, nothing in paragraph (d)(4)(A) prevents the assets from being included in Medicaid eligibility determinations or in Medicaid benefits determinations.  Only income already "contain[ed]" in the trust is sheltered.

Further support for this position can be found in a line of decisions regarding Medicaid liens. Several courts have ruled that a Medicaid lien may attach to proceeds from a lawsuit even when those proceeds are in the hands of an individual who is about to place them in a supplemental needs trust. See, e.g., Sullivan v. County of Suffolk, 174 F.3d 282, 286 (2d Cir. 1999); Norwest Bank of North Dakota, N.A. v. Doth, 159 F.3d 328, 333 (8th Cir. 1998); Cricchio v. Pennisi, 90 N.Y.2d 296, 307-09 (1997).

Because Wong receives small periodic payments as opposed to a lump sum, the payback trust does not make sense as a way to preserve his income for supplemental expenditures. No matter when the calculation takes place, Wong will always have a month's worth of Social Security Disability Insurance to be included as income in his eligibility or benefits determination. Given the high cost of his nursing home care, this money will not prevent him from becoming Medicaid eligible. But each month, HRA may include his social security payment in its calculation of the NAMI. As a result, Wong would owe $1024.81 each month as a contribution to his medical care, and there would be no money left to place in his payback trust.

According to Secretary Leavitt, it is reasonable for HHS to interpret subsection (d) to exclude income being placed in a (d)(4) trust from eligibility determinations, but to include the

same income in benefits determinations.  This interpretation is not particularly compelling in light of § 1396p(d)(1), which states that subsection (d) applies to both "an individual's eligibility for, or amount of, benefits."  As the Tenth Circuit has observed, "§ 1396p(d)(1) indirectly endorses treating money in a Special Needs Trust the same for both eligibility and 'amount of' determinations."  Reames v. Oklahoma, 411 F.3d 1164, 1171 (10th Cir. 2005).  The Reames court faced the same issue presented here:  whether a disabled individual could shelter her disability benefits from Medicaid's co-pay requirements by placing the benefits in a trust pursuant to § 1396p(d)(4)(A).  Oklahoma protected income placed in the trust for purposes of eligibility but counted income placed in the trust for purposes of benefits.  Despite its statement that (d)(1) would appear to require identical treatment of the trust for eligibility and benefits purposes, the court held that "given the tortured concatenation of United States Code provisions required to arrive at the conclusion that these federal laws preclude Oklahoma's regulatory scheme," the court was not willing to make any conclusions about Congressional intent, and was not willing to say that the State Medicaid Manual was unreasonable on this point.  Id.  The question is a matter of first impression in the Second Circuit, and so I am free to respectfully depart from the Tenth Circuit's finding that § 1396p(d) is ambiguous.

Because Wong's Social Security Disability Insurance payments are not "contain[ed]" in his payback trust, but pass through his hands first, I hold that these payments may be included in HRA's calculation of his NAMI.

### III.  The motion to certify a class

Wong's motion to certify a class is denied.

**CONCLUSION**

For the foregoing reasons, Wong's motions for summary judgment and class certification are denied, and the defendants' motions for summary judgment are granted.  Wong's complaint is dismissed and the Clerk is directed to close this case.

SO ORDERED.

Date:     New York, New York
          September 29, 2008

                              S/_____
                                  MIRIAM GOLDMAN CEDARBAUM
                                  United States District Judge